CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

April, 08, 2026

LAURA A. AUSTIN, CLERK
BY:s/ KELLY BROWN
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:25-cv-00584** |
| **v.** | ) | |
| | ) | |
| **APPROXIMATELY $601,668.98 et al.,** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **Defendants.** | ) | |

## ORDER AND OPINION STAYING CASE

This civil forfeiture action is before the Court on the United States' motion to stay the proceeding for six months pursuant to 18 U.S.C. § 981(g)(1). Dkt. 6. The Court held a hearing on the motion on December 22, 2025, and the motion is ripe for review. For the reasons set forth below, the Government's motion is **GRANTED**. The action is **STAYED** until July 1, 2026.

### I.    Background

The United States initiated this civil action seeking forfeiture of approximately $672,582.81 in funds representing proceeds from the sale of a residence at 6768 Christopher Drive, Roanoke, Virginia. *See* Dkt. 1. The Government alleges that claimant Diane Earls's deceased ex-husband, Robert Earls, perpetrated a multimillion-dollar fraud scheme against his investment clients and purchased the couple's residence with criminally derived proceeds from money laundering offenses. The Government further alleges that Ms. Earls assisted Robert Earls in the fraud scheme by, among other things, creating spreadsheets that falsely represented investment returns to victims.

Robert Earls died by suicide in February 2024 after being confronted by one of his clients. *Id.* ¶¶ 34–35. On June 5, 2024, Ms. Earls sold 6768 Christopher Drive, and the

Government executed a warrant to seize the proceeds from the sale of the residence. *Id.* ¶¶ 73–81.

The Government represents that it is actively investigating Ms. Earls's involvement in the fraud scheme and anticipates filing federal criminal charges against her. To prevent civil discovery from undermining the ongoing criminal investigation, the Government moves for a six-month stay under 18 U.S.C. § 981(g)(1).

## II.     Analysis

"Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1). The Government must therefore establish that (1) the underlying criminal investigation is "related" to the instant proceeding and (2) further civil discovery "will" adversely affect the ongoing investigation in that related case. *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 209, 212 (D.D.C. 2014).

### A.  Related Criminal Investigation in Progress

To determine whether a criminal investigation is related to a civil forfeiture proceeding, courts consider "the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings." *United States v. One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d 1180, 1183 n.2 (C.D. Cal. 2011 (citing 18 U.S.C. § 981(g)(4)). "Where a criminal investigation and a civil forfeiture action have common facts, similar alleged violations and some common parties, the actions are clearly related." *United States v. All Funds on Deposit in Suntrust Acct. No. XXXXXXXXX8359 in the Name of Gold & Silver Rsrv., Inc.*, 456 F. Supp. 2d 64, 65 (D.D.C. 2006) (citation omitted).

Here, the instant forfeiture action and the pending fraud investigation are directly related and arise from the same factual circumstances—Ms. Earls's knowledge of and involvement in the alleged fraud scheme. Specifically, the Government alleges that Ms. Earls "conspired with R. Earls to commit wire fraud, and aided and abetted wire fraud, by falsifying client spreadsheets and answering questions about the contents of those spreadsheets." Dkt. 1 ¶ 62. The Government also alleges that Ms. Earls "knew that R. Earls had paid the mortgage for 6768 Christopher Drive for years using criminally derived property." *Id.* ¶ 63. It then claims that the proceeds derived from the sale of 6768 Christopher Drive are subject to forfeiture because they are traceable to wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349, and were involved in money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1957. *Id.* ¶¶ 82–84. Ms. Earls, in turn, has asserted an innocent owner defense. Dkt. 4 ¶ 24. The forfeiture action and criminal investigation therefore have substantial, if not perfect, factual overlap.

Ms. Earls argues that the Government has failed to prove that an actual criminal investigation is in progress as required by Section 981(g)(4). She contends that the Government has been investigating her since at least February 2024, but no charges have been filed. Instead, it appears that the investigation has "stalled or become dormant" based on staffing changes and resources.[1] Dkt. 7 ¶ 9.

The Court rejects this argument. The Complaint filed in August 2025 establishes that the FBI has interviewed Ms. Earls and several alleged victims; executed various search warrants, including one for Ms. Earls's phone; and carefully reviewed the Earls' finances. *See generally* Dkts. 1; 1-1. The Government further represents that its "investigation remains ongoing and is

---

[1] Ms. Earls is correct that unspecified resource limitations cannot justify a stay under Section 981(g)(1). However, they are relevant context for understanding the Government's anticipated timeline for completing the investigation and bringing charges.

expected to result in one or more felony criminal charges." Dkt. 8 at 1. The fact that no charges have been filed against Ms. Earls since her ex-husband's death in February 2024 does not establish that the investigation is dormant. Complex financial fraud investigations routinely require substantial time to complete, particularly where they involve review of extensive financial records, multiple victims, and analysis of the interplay between various parties' actions. I therefore find that a related criminal investigation is in progress.

### B. Adverse Effect of Civil Discovery

Ms. Earls's principal argument is that the Government has failed to make a particularized, fact-specific showing that civil discovery will adversely affect the criminal investigation. She argues that the Government's concerns are merely speculative and conclusory and do not satisfy Section 981(g)(1)'s requirement that the Court determine that civil discovery will adversely affect the investigation. *See* Dkt. 4 ¶¶ 11–12 (arguing that the Government has not identified "any specific written discovery requests, depositions, or discoverable subject areas which actually jeopardize the criminal investigation of Ms. Earls").

To show good cause for staying a related forfeiture case, the "government must make an actual showing that civil discovery will adversely affect the investigation or prosecution of a related criminal case." *All Funds in Suntrust Acct. Number XXXXXXXXX8359, in Name of Gold & Silver Rsrv., Inc.*, 456 F.Supp.2d at 65 (citations omitted). However, "Section 981(g)(1) does not require a particularized showing of prejudice or specific harm; rather, all that the Court must determine is whether the civil discovery will interfere with the criminal investigation." *United States v. Real Prop. Located at 6415 N. Harrison Ave.*, No. 1:11CV304, 2012 WL 4364076, at *3 (E.D. Cal. Sept. 21, 2012) (citation omitted); *see also United States v. $600,980.00 in U.S. Currency*, No. 221CV06965RGKMAR, 2022 WL 2284934, at *3 (C.D. Cal. Mar. 8, 2022) ("[A]

4

specific demonstration of any potential prejudice . . . is not the applicable standard."). "Courts have routinely issued Section 981(g)(1) stays on the basis of the Government's allegations of *likely* prejudice to the criminal proceeding caused by the civil discovery." *One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d at 1184 (emphasis in original) (citations omitted). Indeed, "specific disclosure of prejudice through detailed evidentiary support will only result in the very prejudice to the criminal proceeding that the Government seeks to avoid." *Id.* at 1184–85 (citation omitted).

Here, the Government has made a sufficient showing of prejudice. The central issue in both the civil forfeiture action and the anticipated criminal prosecution is Ms. Earls's knowledge of and participation in the alleged fraud scheme. Where the actions are clearly related and civil discovery would subject the criminal investigation to earlier and broader discovery than would be available in a criminal proceeding, a stay should be granted. *See, e.g.*, *All Funds in Suntrust Acct. Number XXXXXXXX8359, in Name of Gold & Silver Rsrv., Inc.*, 456 F. Supp. 2d at 65–66 (finding that civil discovery would adversely affect the government's criminal investigation by compromising confidential information and burdening law enforcement officials); *United States v. Certain Real Prop. Located at 5137/5139 Cent. Ave. (Deed Book 4082, Page 224, Mecklenburg Cnty. Pub. Registry)*, 776 F. Supp. 1090, 1092 (W.D.N.C. 1991) (finding that the United States would be irreparably injured if the identities of informants and others cooperating with the government were disclosed). In this case, through initial disclosures and continuing supplementation obligations under Federal Rule of Civil Procedure 26, the Government would be required to provide Ms. Earls with evidence and witness identities as they are developed—far earlier and more comprehensively than would be required in a criminal case. As the Government explains, Ms. Earls could depose the case agent, financial analysts, and victims before the

investigation is complete, creating a record under oath and potentially chilling victim cooperation. This stands in stark contrast to criminal discovery, where "there is no general constitutional right to discovery" and the government's obligations are narrowly circumscribed. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

Ms. Earls relies on several cases in which courts denied stays based on conclusory government assertions. *See, e.g.*, *United States v. All Funds Contained in N. Trust Bank of Fla. Acct. No. 7240001868*, No. 3:04-CV-0452-D, 2004 U.S. Dist. LEXIS 15590 (N.D. Tex. Aug. 10, 2004). However, those cases are distinguishable. Here, the Government has provided specific explanations of how civil discovery tools—initial disclosures, continuing supplementation, depositions of agents and victims—would provide her with investigative information and strategic advantages not available in a criminal proceeding. *See United States v. $39,956.45 in U.S. Currency Seized from Bank of N. Carolina Acct. Ending in 3974, in the Name of RD Jessup Props.*, LLC, No. 1:15CV152, 2017 WL 1214459, at *9 (M.D.N.C. Jan. 18, 2017), *report and recommendation adopted as modified sub nom. United States v. $39,956.45 in U.S. Currency Seized from Bank of N. Carolina Acct. Ending in 3974*, No. 1:15CV152, 2017 WL 1194366 (M.D.N.C. Mar. 31, 2017) (explaining that allowing civil discovery to proceed would allow the claimant to obtain investigative material that the government need not reveal in criminal discovery, may discourage government witnesses from cooperating in the criminal investigation, and would result in one-sided discovery where the government produces discovery materials while movants invoke their Fifth Amendment right to remain silent).

The Government requests a six-month stay, which numerous courts have found reasonable even when the investigation had been ongoing for several years prior. *See, e.g.*, *United States v. $307,970.00, in U.S. Currency*, 156 F. Supp. 3d 708, 727 (E.D.N.C. 2016)

(granting a six-month stay where the forfeiture action was brought four-and-a-half years earlier);

*United States v. $36,083.22 in U.S. Currency*, No. 1:11-CV-145, 2011 U.S. Dist. LEXIS 122237, at *3 (W.D.N.C. Oct. 20, 2011). Given the complexity of the fraud scheme under investigation and the Government's representation that charges are forthcoming, I find that a six-month stay is appropriate and necessary to protect the integrity of the criminal investigation.

### III.    Conclusion

For the foregoing reasons, the United States' motion to stay will be **GRANTED**. This civil forfeiture proceeding is **STAYED** until July 1, 2026. The Government is further **ORDERED** to file a status update no later than June 24, 2026. The Government may move to extend the stay if necessary, and the claimant may move to lift the stay if circumstances materially change.

It is so **ORDERED.**

Entered:  April 8, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge